Nos. 21-35815 & 21-35856
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

BRIAN TINGLEY,

*Plaintiff-Appellant,*

v.

ROBERT W. FERGUSON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL
FOR THE STATE OF WASHINGTON, ET AL.,

*Defendants-Appellees,*

EQUAL RIGHTS WASHINGTON,

*Intervenor-Defendant-Appellee,*

On Appeal from the United States District Court
for the Western District of Washington
No. 3:21-CV-05359-RJB
Hon. Robert J. Bryan
_____

BRIEF OF *AMICUS CURIAE* INSTITUTE FOR JUSTICE
IN SUPPORT OF NEITHER PARTY
_____

Paul M. Sherman
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
psherman@ij.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), the undersigned counsel states that the Institute for Justice ("IJ") is not a publicly held corporation and does not have any parent corporation, and that no publicly held corporation owns 10 percent or more of any corporation's stock.


Dated:  December 13, 2021            /s/ Paul M. Sherman
                                     Paul M. Sherman

                                     *Counsel for Amicus Curiae*
                                     *Institute for Justice*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF AMICUS CURIAE ..................................................................1

SUMMARY OF THE ARGUMENT ......................................................................1

ARGUMENT .........................................................................................................3

I.     Countless Americans earn their living by speaking, and the ruling below threatens all of them ............................................................3

II.    Reviving the professional speech doctrine may harm the very people the government is trying to protect........................................6

III.   Supreme Court precedent establishes that talk therapy is speech, and content-based restrictions on talk therapy must be reviewed with strict scrutiny ...................................................................8

     A.   *NIFLA* abrogated *Pickup* ..................................................9

     B.   The trial court's attempts to distinguish *NIFLA* and *Pacific Coast Horseshoeing* all fail.................................11

     C.   Applying ordinary First Amendment principles to Appellant's claim, Washington's law is a content-based restriction on speech subject to strict scrutiny.................................13

CONCLUSION.....................................................................................................17

FORM 8 CERTIFICATE OF COMPLIANCE .....................................................19

CERTIFICATE OF SERVICE .............................................................................20

# TABLE OF AUTHORITIES

CASES                                                                    Page(s)

*Brandt v. Rutledge*,
   No. 4:21CV00450, 2021 WL 3292057 (E.D. Ark. Aug. 2, 2021) .................2, 7

*Cooksey v. Futrell*,
   721 F.3d 226 (4th Cir. 2013) ................................................................5

*Dimaya v. Lynch*,
   803 F.3d 1110 (9th Cir. 2015) ...........................................................13

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
   949 F.3d 116 (3d Cir. 2020) ...............................................................11

*Hines v. Alldredge*,
   783 F.3d 197 (5th Cir. 2015) ..............................................................11

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010).......................................................................*passim*

*Hughes Tool Co. v. Trans World Airlines, Inc.*,
   409 U.S. 363 (1973).........................................................................13

*Järlström v. Aldridge*,
   No. 3:17-cv-00652-SB, 2017 WL 6388957 (D. Or. Dec. 14, 2017) ..................4

*King v. Governor of N.J.*,
   767 F.3d 216 (3d Cir. 2014) ...............................................................11

*Mille v. Gammie*,
   335 F.3d 889 (9th Cir. 2003) ..............................................................10

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   138 S.Ct. 2361 (2018)..................................................................*passim*

*Otto v. City of Boca Raton*,
   9981 F.3d 854 (11th Cir. 2020) ......................................................11, 12

*Pickup v. Brown*,
    740 F.3d 1208 (9th Cir. 2014) ...................................................................*passim*

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020) ...................................................................*passim*

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)...................................................................................16, 17

*Rosemond v. Markham*,
    135 F. Supp. 3d 574 (E.D. Ky. 2015) ...................................................4

*Tingley v. Ferguson*,
    No. 3:21-cv-05359-RJB, 2021 WL 3861657 (W.D. Wash. Aug. 30, 2021)......12

*Vizaline, LLC v. Tracy*,
    949 F.3d 927 (5th Cir. 2020) ..............................................................11

*Wollschlaeger v. Governor of Fla.*,
    848 F.3d 1293 (11th Cir. 2017) ...........................................................7

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I...................................................................................*passim*

## CODES AND RULES

Ark. Code § 20-9-1504 .........................................................................7

Wash. Code § 18.130.020(4)(a)..............................................................16

Wash. Code § 18.130.020(4)(b)..............................................................16

Fed. R. of App. P. 26.1(a) .......................................................................ii

## OTHER AUTHORITIES

*Del Castillo v. Philip*,
    No. 3:17-cv-722-MCR-HTC (N.D. Fla. filed July 17, 2019), available at
    https://ij.org/wp-content/uploads/2017/10/FL-Diet-Speech-Opinion.pdf............5

*Miss. Startup Files First Amend. Countersuit Against State Licensing Bd.*,
    https://ij.org/press-release/mississippi-startup-files-first-amendment-
    countersuit-against-state-licensing-board/ (last visited Dec. 13, 2021) ...............5

*N.C. Drones*,
    https://ij.org/case/north-carolina-drones/ (last visited Dec. 13, 2021) .................5

*Nutt v. Ritter*,
    No. 7:21-cv-00106-M (E.D.N.C. filed June 9, 2021), available at
    https://ij.org/wp-content/uploads/2021/06/NC-Engineering-Complaint.pdf .......4

## STATEMENT OF *AMICUS CURIAE*[1]

The Institute for Justice is a nonprofit, public-interest legal center dedicated to defending the essential foundations of a free society: property rights, economic liberty, educational choice, and freedom of speech. As part of its mission to defend freedom of speech, the Institute has challenged laws across the country that regulate a wide array of occupational speech, including teletherapy, parenting advice, dietary advice, and veterinary advice. Amicus believes that the decision below, if affirmed by this panel, represents a serious threat to the constitutional protection afforded to these and countless other types of occupational speech.

## SUMMARY OF ARGUMENT

The speech at issue in this case is surely controversial. But the First Amendment principles that apply here should not be: Talk therapy is speech within the scope of the First Amendment's protection, and content-based burdens on that speech must satisfy strict scrutiny if they are to survive.

Faithfully applying those principles is important, because the significance of this case is not limited to therapists and counselors offering potentially harmful advice. The ruling below, if affirmed, would deprive countless speakers throughout the Ninth Circuit of their First Amendment rights. Besides that, it could ultimately

---

[1] No party counsel authored any portion of this brief, and no party, party counsel, or person other than *Amicus* or its counsel paid for this brief's preparation or submission. All parties have consented to the filing of this brief.

1

harm the very children whom Washington has set out to protect. It is no stretch to imagine that some state may wish to pass legislation that, for example, prohibits mental health counselors from providing *affirming* treatment to gay or transgender youth. And, indeed, the Eighth Circuit will soon consider the constitutionality of an Arkansas law that prohibits licensed medical providers from referring youth to other medical providers for gender-affirming treatment. *See Brandt v. Rutledge*, No. 4:21CV00450, 2021 WL 3292057 (E.D. Ark. Aug. 2, 2021) (appeal noticed). To hold that the speech here is unprotected is necessarily to hold that the speech there is unprotected, leaving speakers and their listeners at the mercy of their state legislatures.

The better course is to hold, as the Supreme Court instructs, that all this speech is speech and that restrictions on speech must be backed by real evidence. But the court below sought to avoid this conclusion, relying on this Circuit's decision in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014), in which a panel of this Court upheld a similar prohibition on conversion therapy for minors. This was error. The U.S. Supreme Court abrogated *Pickup* in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) (*NIFLA*), in which the Court rejected the so-called professional speech doctrine and reaffirmed that speech by a state-licensed professional is entitled to the same protection as that by any other speaker. And this Circuit recognized that fact in *Pacific Coast Horseshoeing*

2

*School, Inc. v. Kirchmeyer*, 961 F.3d 1062 (9th Cir. 2020), in which this Circuit similarly reversed a trial court for its misplaced reliance on the now discredited *Pickup* decision.

The trial court's attempt to distinguish *NIFLA* and *Pacific Coast Horseshoeing*, asserting that those cases involved speech while this case supposedly involves only conduct, is wrong. Indeed, it is precisely the erroneous view of speech versus conduct that the Supreme Court rejected in *NIFLA*. Thus, this Court should review Washington's law the same way it would review any other content-based restriction on speech: By applying strict scrutiny and upholding the law only if it is narrowly tailored to serve a compelling government interest.

## ARGUMENT

### I. Countless Americans earn their living by speaking, and the ruling below threatens all of them.

As America has moved to a more information-based economy, ever-greater numbers of people earn their living by speaking. Under the ruling below, however, much of this speech could be denuded of First Amendment protection simply by relabeling it as the "conduct" of "practicing a profession." As *Amicus* will discuss in Section III, that would conflict with binding Supreme Court and Ninth Circuit precedent. But here *Amicus* wants to show just some of the vast array of occupations that could be affected, using examples drawn from its own litigation.

Consider the case of retired engineer Wayne Nutt. *Nutt v. Ritter*, No. 7:21-cv-00106-M (E.D.N.C. filed June 9, 2021), available at https://ij.org/wp-content/uploads/2021/06/NC-Engineering-Complaint.pdf. For most of his career, Nutt lawfully practiced engineering in North Carolina, without a license, under the state's "industrial exemption." But when Nutt testified as an expert witness in a lawsuit, the state's engineering board accused him of the unlicensed "practice" of engineering. And North Carolina is not the only state to apply its engineering statute to public advocacy; the state of Oregon did the same when it accused engineer Mats Järlström of the unlicensed practice of engineering after Järlström emailed the state's board with concerns about the state's timing formula for traffic lights. *See Järlström v. Aldridge*, No. 3:17-cv-00652-SB, 2017 WL 6388957 (D. Or. Dec. 14, 2017).

The Kentucky Board of Examiners of Psychology took a similar tack when it sent a cease-and-desist letter to syndicated newspaper columnist John Rosemond after he published an advice column in a Kentucky newspaper in which he offered advice to parents struggling with their teenage son. *See Rosemond v. Markham*, 135 F. Supp. 3d 574 (E.D. Ky. 2015). As here, the government argued that advice tailored to an individual's personal parenting situation was the unlicensed "practice of psychology," that could be regulated without considering the First Amendment.

State surveying boards in North Carolina and Mississippi have taken similar action against companies that produce maps or take aerial photographs of property. *See Mississippi Startup Files First Amendment Countersuit Against State Licensing Board*, https://ij.org/press-release/mississippi-startup-files-first-amendment-countersuit-against-state-licensing-board/ (last visited Dec. 13, 2021); *North Carolina Drones*, https://ij.org/case/north-carolina-drones/ (last visited Dec. 13, 2021). In both cases, the state has argued that creating these images is the unlicensed "practice of surveying," even though the maps and photos do not establish official property lines or have any other independent legal effect.

Other examples abound. In North Carolina, the state's dietetics board went through diet blogger Steve Cooksey's website with a red pen, specifying on a line-by-line basis which portions of his low-carb diet advice were the illegal, unlicensed practice of dietetics. *Cooksey v. Futrell*, 721 F.3d 226, 229–30 (4th Cir. 2013). Further south, the state of Florida conducted a sting operation against diet coach Heather Del Castillo after receiving a complaint that she had been offering dietary advice to willing clients. *See Del Castillo v. Philip*, No. 3:17-cv-722-MCR-HTC (N.D. Fla. filed July 17, 2019), available at https://ij.org/wp-content/uploads/2017/10/FL-Diet-Speech-Opinion.pdf. And even advice about animals isn't safe—in Texas, the state has argued that retired veterinarian Ron Hines may not offer any individualized advice about any animal, even to pet

owners outside the United States, unless he has first physically examined the animal.

In each of these cases, the government argued—or is still arguing—that the plaintiff's speech is actually the "conduct" of practicing a profession, and thus receives no First Amendment protection. But if that were true, then there would be no limits to what could be cast out from the scope of the First Amendment. That is because all speech can be characterized, in some sense, as conduct. University professors engage in the conduct of "instructing." Political consultants engage in the conduct of "strategizing." Stand-up comedians engage in the conduct of "inducing amusement." And under the trial court's view, such relabeling is all that is necessary to bring these speakers under government control. This Court should not endorse that sweeping and dangerous result.

## II. Reviving the professional speech doctrine may harm the very people the government is trying to protect.

Even if one ignored the broad repercussions that reviving the professional speech doctrine would have for other occupations, there is no reason to believe that the doctrine would be used only to help vulnerable groups as Washington claims to be doing. Indeed, the professional speech doctrine is just as likely to be wielded against such groups.

Consider Arkansas's recent enactment of Act 626, which prohibits physicians and other healthcare providers from providing or referring any person

6

under the age of 18 for "gender transition procedures." Ark. Code § 20-9-1504. When advocates for transgender minors challenged that law's referral prohibition as a violation of the First Amendment, the government defended the law on precisely the grounds that the government urges here, arguing "that Act 626 is not a regulation of speech but rather a regulation of professional conduct." *Brandt*, 2021 WL 3292057, at *6 (E.D. Ark. Aug. 2, 2021).

Citing *NIFLA*, the trial court rejected that argument and held that the law was a content-based restriction on speech subject to strict scrutiny. Finding that the government was unlikely to satisfy that standard, the trial court thus preliminarily enjoined the law, allowing the plaintiffs to receive referrals for medical care during their lawsuit. But had the trial court instead followed the lead of the court below, it would have reviewed Arkansas's law with only rational-basis review, which it may well have survived.

If this Court does not similarly repudiate the professional speech doctrine, it will be inviting other states within the Ninth Circuit to enact laws like Arkansas's, not just on issues of gender identity, but on any number of other controversial issues. *See, e.g.*, *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293 (11th Cir. 2017) (en banc) (invalidating a Florida law that prohibited doctors from asking their patients about gun ownership). In a Circuit that spans nine politically diverse

7

states and that is home to tens of millions of people, there is no telling what harm might follow.

But there is no reason to go down that road. As explained in part III of this brief, the trial court's First Amendment ruling cannot be squared with binding precedent, which requires that restrictions on talk therapy be treated as what they are: content-based restrictions on speech.

### III. Supreme Court precedent establishes that talk therapy is speech, and content-based restrictions on talk therapy must be reviewed with strict scrutiny.

The trial court correctly recognized that the central First Amendment question here is whether the Supreme Court's ruling in *NIFLA* abrogated this Circuit's earlier ruling in *Pickup*. It did, a fact this Circuit later recognized in *Pacific Coast Horseshoeing*. The trial court's attempt to distinguish those cases by claiming they involved speech while this case involves conduct fails because it simply restates the now-discredited professional speech doctrine at the heart of *Pickup*, under which some speech was improperly relabeled "conduct." Applying ordinary First Amendment principles, Washington's prohibition on conversion therapy—when it is conducted through talk therapy—is a content-based restriction on speech that must be reviewed with strict scrutiny.

## A. *NIFLA* abrogated *Pickup*.

Because talk therapy is speech, and because the government here has singled out talk therapy on a particular topic for disfavored treatment, Washington's law would ordinarily be considered a content-based restriction on speech that must be reviewed with strict scrutiny. The wrinkle, of course, is that this Court held precisely the opposite in *Pickup*. But *Pickup* is no longer good law. This is evident not only from the Supreme Court's ruling in *NIFLA*, but also from this Circuit's later decision in *Pacific Coast Horseshoeing*.

First, *NIFLA*. There, the Supreme Court held unconstitutional a compelled speech requirement that applied to so-called crisis pregnancy centers. This Circuit had upheld the law, relying on *Pickup* to conclude that the law regulated only "professional speech," and was thus not subject to strict scrutiny.

The U.S. Supreme Court made short work of that argument, identifying *Pickup* by name and rejecting the "professional speech" doctrine it adopted. Here, *Amicus* will simply let the Supreme Court speak for itself:

- "Although the [challenged law] is content based, the Ninth Circuit did not apply strict scrutiny because it concluded that the notice regulates 'professional speech.'"

- "Some Courts of Appeals have recognized 'professional speech' as a separate category of speech that is subject to different rules. See, *e.g.,* . . . *Pickup v. Brown,* 740 F.3d 1208, 1227–1229 (9th Cir. 2014)";

9

- "But this Court has not recognized 'professional speech' as a separate category of speech."

- "This Court's precedents do not permit governments to impose content-based restrictions on speech without persuasive evidence of a long (if heretofore unrecognized) tradition to that effect." (cleaned up)

- "This Court's precedents do not recognize such a tradition for a category called 'professional speech.'"

- "In sum, neither California nor the Ninth Circuit has identified a persuasive reason for treating professional speech as a unique category that is exempt from ordinary First Amendment principles."

*NIFLA*, 138 S. Ct. at 2371–75.

Under this Circuit's case law, these statements are more than enough to show that *NIFLA* abrogated *Pickup*. As this Court has recognized, all that is necessary to meet this standard is that the Supreme Court's ruling in *NIFLA* be "clearly irreconcilable" with *Pickup*. *Mille v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). That standard does not require that the Supreme Court identify circuit precedent by name and explicitly reject its holding—but that the Supreme Court *has* done so here, should eliminate all doubt.

If there had been any remaining doubt, though, this Court's decision in *Pacific Coast Horseshoeing* should have resolved it. There, as here, the plaintiff was prohibited from speaking with clients (in that case, students) based on the subject-matter of his speech. There, as here, the trial court relied on *Pickup* to hold that the law regulated only conduct and not speech. And there, as this Court should

10

do again here, this Circuit recognized that *Pickup* had been "abrogated" by *NIFLA* and then applied ordinary principles of First Amendment law. 961 F.3d at 1069 (applying *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) to conclude that the challenged law was a content-based regulation of speech).[2]

## B. The trial court's attempts to distinguish *NIFLA* and *Pacific Coast Horseshoeing* all fail.

The trial court made two main attempts to distinguish *NIFLA* and *Pacific Coast Horseshoeing*. First, the trial court ruled that *NIFLA* and *Pacific Coast Horseshoeing* both involved regulations of speech, while this case—in the court's view--involves only a regulation of conduct. Second, the court ruled that the Ninth Circuit's and Supreme Court's failure to take the extraordinary steps of recalling the mandate in *Pickup* or granting certiorari to reconsider *Pickup* in light of *NIFLA* indicate that *Pickup* remains good law. Neither of these arguments succeeds.

First, the trial court is wrong that *Pickup* can be distinguished because it involved professional conduct and not speech. That is simply a restatement of the

---

[2] Other federal appellate courts have similarly recognized that *NIFLA* abrogated earlier decisions adopting the professional speech doctrine. *See Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 933 (5th Cir. 2020) (holding that *NIFLA* abrogated *Hines v. Alldredge*, 783 F.3d 197 (5th Cir. 2015), in which the Fifth Circuit had adopted the professional speech doctrine); *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 149 n.242 (3d Cir. 2020) (recognizing that *NIFLA* abrogated *King v. Governor of N.J.*, 767 F.3d 216 (3d Cir. 2014)); *see also Otto v. City of Boca Raton*, 981 F.3d 854, 867 (11th Cir. 2020) ("[B]ecause *NIFLA* directly criticized *Pickup* and *King*—cases with very close facts to this one—we do not think there is much question that, even if some type of professional speech might conceivably fall outside the First Amendment, the speech at issue here does not.").

professional speech doctrine, which erroneously allowed speech to be relabeled as "professional conduct." Instead, the appropriate test, as this Court made clear in *Pacific Coast Horseshoeing*, is that set forth in *Humanitarian Law Project*: whether the law's application is triggered by speech of a particular content. *See also Otto*, 981 F.3d at 867 (reaching the same conclusion).

The trial court's error is shown most vividly by its equation of talk therapy with the prescribing of drugs:

> The prohibited conduct at issue here, performing conversion therapy, is analogous to [a] doctor giving a prescription for marijuana because it involves engaging in a specific act designed to provide treatment.

*Tingley v. Ferguson*, No. 3:21-cv-05359-RJB, 2021 WL 3861657, at *6 (W.D. Wash. Aug. 30, 2021). This comparison is inapt because a prohibition on prescribing a drug is aimed solely at the non-communicative effect of the speech: the creation of a legal entitlement to access a controlled substance. The speech at issue is different. Advice is not a drug—if talk therapy works, it works by advising, encouraging, or persuading listeners. Thus, the law is triggered by speech and speech alone.

Finally, it is irrelevant that neither the Ninth Circuit nor the Supreme Court recalled the mandate or granted certiorari to overturn *Pickup* in the wake of *NIFLA*. When the Supreme Court overrules a case, it announces a rule of law that lower courts are then bound to apply. The Supreme Court need not reopen closed

cases to prove that it really meant what it said, and its failure to do so—like all denials of certiorari—cannot be read to mean anything. *See Dimaya v. Lynch*, 803 F.3d 1110, 1119 (9th Cir. 2015); *see also Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 365 n.1 (1973) (describing "the well-settled view that denial of certiorari imparts no implication or inference concerning the Court's view of the merits").

The same is true of this Circuit's refusal to recall the mandate in *Pickup*. Again, when this Circuit recognizes that a Supreme Court decision has abrogated an earlier panel decision, this Court need not reopen old cases to prove that those decisions have been abrogated. It is enough for this Circuit to recognize that the case has been abrogated and to apply the correct rule of law going forward, just as this Court did in *Pacific Coast Horseshoeing*.

### C. Applying ordinary First Amendment principles to Appellant's claim, Washington's law is a content-based restriction on speech subject to strict scrutiny.

With *Pickup* no longer good law, this Court must consider anew whether a restriction on face-to-face advice and counseling is a restriction on free speech or simply a restriction on conduct. Under binding precedent from the U.S. Supreme Court, the answer is clear: Advice and counseling delivered through the spoken word is speech, not "conduct."

13

The controlling case is *Holder v. Humanitarian Law Project*, in which the U.S. Supreme Court considered the constitutionality of a federal law that forbade speech in the form of individualized legal and technical advice to designated foreign terrorists. 561 U.S. 1, 6–11 (2010). The plaintiffs in that case included two U.S. citizens and six domestic organizations that wished, among other things, to provide "train[ing] [to] members of [the Kurdistan Workers' Party (PKK)] on how to use humanitarian and international law to peacefully resolve disputes" and to "teach[] PKK members how to petition various representative bodies such as the United Nations for relief." *Id.* at 9, 14–15. They wanted, in other words, to give individualized advice solely through the spoken word.

They were prevented from doing so, however, because speech in the form of advice was illegal. Under federal law, the plaintiffs were prohibited from providing terrorist groups with "material support or resources." *Id.* at 12. That term was defined to include both "training," defined as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge," and "expert advice or assistance," defined as "advice or assistance derived from scientific, technical or other specialized knowledge." *Id.* at 12–13. The plaintiffs challenged that prohibition as a violation of the First Amendment. *Id.* at 24–39.

The government defended the law by arguing that the material-support prohibition was aimed at conduct—specifically the conduct of providing "material

14

support" to terrorist groups—and therefore only incidentally burdened the plaintiffs' expression. *Id.* at 26–27. But the U.S. Supreme Court emphatically and *unanimously* rejected that argument, holding that the material-support prohibition was a content-based regulation of speech subject to heightened scrutiny.[3] *Id.*

Most importantly, and in sharp conflict with the ruling below, the Supreme Court did not base its ruling on some metaphysical distinction between "speech" and "conduct." Instead, the Court took a commonsense approach to determining whether the First Amendment was implicated, concluding that the material-support prohibition was a content-based restriction on speech because the plaintiffs were allowed to communicate some things to designated terrorist groups but not other things:

> [The material-support prohibition] regulates speech on the basis of its content. Plaintiffs want to speak to [designated terrorist organizations], and whether they may do so under [the law] depends on what they say. If plaintiffs' speech to those groups imparts a "specific skill" or communicates advice derived from "specialized knowledge"—for example, training on the use of international law or advice on petitioning the United Nations—then it is barred. On the other hand, plaintiffs' speech is not barred if it imparts only general or unspecialized knowledge.

*Id.* at 27 (citations omitted).

---

[3] Although only six justices joined the majority opinion in *Holder*, all nine justices agreed that, as applied to the plaintiffs in that case, the material-support prohibition was a restriction on speech, not conduct. *See id.* at 26–28; *id.* at 45 (Breyer, J., dissenting).

The Court also rejected the notion that the material-support prohibition could escape strict scrutiny because it "*generally* function[ed] as a regulation of conduct." *Id.* As the Court observed, even when a law "may be described as directed at conduct," strict scrutiny is still appropriate when, "as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message." *Id.* at 28.

This analysis applies to the First Amendment claim in this case. Plaintiff wishes to talk with his minor clients, and "whether [he] may do so . . . depends on what [he] say[s]." *Id.* at 27. If Plaintiff communicates "acceptance, support, and understanding of clients or the facilitation of clients' coping, social support, and identity exploration and development that do not seek to change sexual orientation or gender identity," his speech is permitted. Wash. Rev. Code § 18.130.020(4)(b). If, on the other hand, Plaintiff communicates advice on ways to "change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex," his speech is prohibited. *Id.* § 18.130.020(4)(a). Further, just as in *Humanitarian Law Project*, although Washington's law may generally function as a ban on conduct, the "conduct" triggering application of the statute to Plaintiff consists entirely of speech.

Other pre-*NIFLA* decisions by the U.S. Supreme Court further support this conclusion. Most notably, *Reed v. Town of Gilbert* shows that the government's

16

laudable motive for enacting the law—protecting the health of transgender minors—does not insulate the law from ordinary First Amendment scrutiny. That is because "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained." *Reed*, 576 U.S. 155, 165 (2015) (cleaned up). "In other words, an innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 166.

In short, Washington's restriction on talk therapy is a content-based restriction on speech and must be analyzed as such. That conclusion does not necessarily mean that the government will lose; Appellees may be able to show that conversion therapy is sufficiently harmful—and Washington's law sufficiently narrow—that the law survives strict scrutiny. But the government must be held to that burden. If it is not, countless others who speak for a living will be wrongly deprived of their First Amendment rights.

## CONCLUSION

The trial court's ruling that individualized counseling is professional conduct and not constitutionally protected speech was error. This Court should reverse that ruling and apply the constitutionally required strict scrutiny, or remand this case to the district court for it to do so in the first instance.

17

Dated: December 13, 2021

/s/ Paul M. Sherman
Paul M. Sherman
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA  22203
(703) 682-9320
psherman@ij.org

*Counsel for Amicus Curiae*
*Institute for Justice*

18

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS
## 9TH CIR. CASE NUMBERS 21-35815 & 21-35856

I am the attorney or self-represented party.

**This brief contains 3,980 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** /s/ Paul M. Sherman          **Date** December 13, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Paul M. Sherman
Paul M. Sherman
INSTITUTE FOR JUSTICE