CA No. 21-35815, 21-35856
DC No. 3:21-cv-05359-RJB

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN TINGLEY,

*Plaintiffs-Appellants/Cross-Appellee,*

v.

ROBERT W. FERGUSON, in his official capacity as Attorney General of the State of Washington; UMAIR A. SHAH, in his official capacity as Secretary of Health for the State of Washington; and KRISTIN PETERSON, in her official capacity as Assistant Secretary of the Health Systems Quality Assurance Division of the Washington State Department of Health,

*Defendants-Appellees/Cross-Appellants,*

and

EQUAL RIGHTS WASHINGTON,

*Defendant-Intervenor-Appellee.*

---

Appeal From Judgment Of The United States District Court
For The Western District Of Washington
Case No. 3:21-cv-05359-RJB
The Honorable Robert J. Bryan

---

**BRIEF *AMICUS CURIAE* OF FIRST AMENDMENT SCHOLARS SUPPORTING APPELLEES AND AFFIRMANCE**

---

ARNOLD & PORTER KAYE SCHOLER LLP
SEAN M. SELEGUE
Sean.SeLegue@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: 415.471.3169
Facsimile: 415.471.3400

*Attorneys for Amici Curiae
First Amendment Scholars*

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTEREST OF *AMICI CURIAE* | 1 |
| STATEMENT OF COMPLIANCE WITH RULE 29 | 2 |
| SUMMARY OF ARGUMENT | 3 |
| ARGUMENT | 4 |
|    I. *NIFLA* DID NOT OVERRULE *PICKUP* | 4 |
|    II. ACCEPTING APPELLANT'S ARGUMENT THAT CONVERSION THERAPY IS PROTECTED SPEECH WOULD ENDANGER THE PUBLIC. | 7 |
| CONCLUSION | 12 |

i

**TABLE OF AUTHORITIES**

    Page(s)

**Cases**

*Conant v. Walters*,
   309 F.3d 629 (9th Cir. 2002) ............................................................. 9, 10

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949) ............................................................................ 7, 8

*NAACP v. Button*,
   371 U.S. 415 (1963) ................................................................................ 6

*Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal.
   Bd. of Psychology*,
   228 F.3d 1043 (9th Cir. 2000) ................................................................. 8

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ................................................................. 3, 4, 5, 6

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ............................................................................ 9

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447 (1978) ............................................................................ 7, 8

*Pickup v. Brown*,
   740 F.3d 1208 (9th Cir. 2014) ......................................................... 3, 4, 6

*Planned Parenthood of Se. Penn.. v. Casey*,
   505 U.S. 833 (1992) ................................................................................ 5

*Shea v. Bd. of Med. Exam'rs*,
   81 Cal. App. 3d 564 (1978) .................................................................... 9

**Court Rules**

FED. R. APP. P.
   29(a) ....................................................................................................... 2
   29(a)(4)(E) ............................................................................................. 2

**Other Authorities**

Robert Post, *Informed Consent to Abortion: A First Amendment Analysis of Compelled Physician Speech* 2007 U. ILL. L. REV. 939, 950 (2007) ................................. 11

ROBERT C. POST, DEMOCRACY, EXPERTISE, AND ACADEMIC FREEDOM: A FIRST AMENDMENT JURISPRUDENCE FOR THE MODERN STATE (2012) ............................................................. 9

**INTEREST OF *AMICI CURIAE***

*Amici curiae* are First Amendment scholars who share an interest in ensuring that the constitutionality of the State of Washington's Senate Bill 5722 ("SB 5722") continues to be recognized.

*Alan E. Brownstein* is Professor of Law, Boochever and Bird Chair for the Study and Teaching of Freedom and Equality Emeritus, at the University of California, Davis Law School. He has written extensively on freedom of speech and other constitutional law subjects, including dozens of law review articles. His books include (with Leslie Jacobs) Global Issues in Freedom of Speech and Religion (2008). Professor Brownstein received the UC Davis School of Law's Distinguished Teaching Award in 1995 and the UC Davis Distinguished Scholarly Public Service Award in 2008. He is a member of the American Law Institute.

*Erwin Chemerinsky* is the Dean of, and Jesse H. Choper Distinguished Professor of Law at, the University of California, Berkeley School of Law. Previously he was the Founding Dean and Distinguished Professor of Law at the University of California, Irvine School of Law. He also taught at Duke Law School for four years, the University of Southern California School of Law for 21 years as well as UCLA School of Law and DePaul University College of Law. His areas of expertise are constitutional law, federal practice, civil rights and civil liberties, and appellate litigation. He is the author of seven books and

1

nearly 200 law review articles. Among the many courses he has taught are First Amendment Law and Free Speech Rights on College Campuses.

*Brian Soucek* is Professor of Law and Chancellor's Fellow at the University of California, Davis Law School. His teaching and law review articles center on free speech and equality law. Professor Soucek is a recent Fellow of the University of California's National Center for Free Speech and Civic Engagement and has received the Dukeminier Award from UCLA's Williams Institute for his scholarship on sexual orientation discrimination. Before coming to Davis, he taught philosophy at the University of Chicago, where he was Co-Chair of the Society of Fellows in the Liberal Arts.

## STATEMENT OF COMPLIANCE WITH RULE 29

This brief is submitted pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure. All parties to this appeal consented to the filing of this brief. Pursuant to Rule 29(a)(4)(E), *amici curiae* state that no party or party's counsel authored this brief in whole or in part, no party or party's counsel contributed money to fund the preparation or submission of this brief, and no person other than *amici curiae* and their counsel contributed money to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Resolution of the First Amendment challenge in this appeal boils down to deciding whether *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*"), overruled this Court's decision in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014). That is because *Pickup* rejected just such a First Amendment challenge to a California statute substantially identical to SB 5722 on the ground that the statute prohibited a type of psychological treatment and that, under longstanding precedent, such treatment is conduct, not speech. 740 F.3d at 1225–32. The purpose of talk therapy as a means of psychological treatment is not for therapists to express themselves but rather to deliver assistance and relief to the patient who comes to them for treatment. The Supreme Court in *NIFLA* expressly endorsed and ratified the longstanding precedent holding that treatment is conduct, not speech, even when treatment is carried out through words. *See* Part I, *infra*.

A ruling that SB 5722 violates the First Amendment would imperil the public because treating a licensed practitioner's words said in the course of psychological or medical treatment as protected speech would call into question the constitutionality of imposing civil liability for malpractice and professional discipline. The courts have long recognized a distinction between speech used as a means of providing treatment, which is conduct and not protected expression, and a

3

professional's protected participation in public discourse and other expressions of opinion outside of treatment. Here, SB 5722 prohibits licensed practitioners from employing a discredited and dangerous treatment on minors. It does not prohibit such practitioners from discussing sexual orientation or gender identity change efforts with anyone, including patients. *See* Part II, *infra*.

## ARGUMENT
## I.
## *NIFLA* DID NOT OVERRULE *PICKUP*

Appellant contends erroneously that *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), overruled this Court's decision in *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014). Not only is that wrong but—as Appellees have ably shown[1]—*NIFLA* expressly endorsed longstanding precedent holding that medical or psychological treatment is not protected expression under the First Amendment. Rather, such treatment is conduct outside the First Amendment even when speech provides a means of treatment, such as in psychotherapy. 138 S. Ct. at 2373.

As First Amendment scholars, we confirm that Appellees are unambiguously correct on this point. *NIFLA* did call into question an

---

[1] Brief for State Appellees Cross-Appellees 31–37 (Dkt. 36); Answering Brief of Defendant-Intervenor-Appellee Equal Rights Washington 21–24 (Dkt. 35).

4

overly broad notion of "professional speech" that would provide lesser protection for speech "merely because it is uttered by [a] 'professional[]'" regardless of context. *Id.* at 2371–72. But *NIFLA* did not turn on that point, because the Court left open the possibility that in future cases, persuasive reasons might be given why "treating professional speech [is] a unique category that is exempt from ordinary First Amendment principles." *Id.* at 2375.

More importantly for the present case, *NIFLA* explicitly distinguished the category of professional speech from "regulations of professional conduct that incidentally burden speech"—regulations the Court said it has long upheld. The Court reaffirmed its existing precedent holding that medical or psychological treatment carried out through spoken words is to be treated as conduct, not speech, for First Amendment purposes. 138 S. Ct. at 2373. Describing its "precedent[]" in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), the Court wrote that regulation of speech "only 'as part of the *practice* of medicine'" through "reasonable licensing and regulation by the State" is permissible. 138 S. Ct. at 2373 (emphasis in original) (quoting *Casey*, 505 U.S. at 884 (opinion of O'Connor, Kennedy and Souter, JJ.)). Such licensing and regulation, the Court confirmed, constitutes an allowable "regulation[] of professional conduct that incidentally burdens speech." *Id.* "Longstanding torts for professional

5

malpractice, for example, 'fall within the traditional purview of state regulation of professional conduct.'" *Id.* (quoting *NAACP v. Button*, 371 U.S. 415, 438 (1963)).

*Pickup* rejected a prior First Amendment challenge to a California statute substantially identical to SB 5722. In doing so, *Pickup* expressly and unambiguously based its conclusion on the principle that treatment is conduct, not speech. In this Court's words, California "Senate Bill 1172 regulates conduct. It bans a form of treatment for minors." *Pickup*, 740 F.3d at 1229.

> Most, if not all, medical and mental health treatments require speech, but that fact does not give rise to a First Amendment claim when the state bans a particular treatment. When a drug is banned, for example, a doctor who treats patients with that drug does not have a First Amendment right to speak the words necessary to provide or administer the banned drug. Were it otherwise, then any prohibition of a particular medical treatment would raise First Amendment concerns because of its incidental effect on speech.

*Id.* at 1229 (citation omitted).

Because *Pickup* relied on the established rule that speech in the course of treatment is not protected by the First Amendment, and because *NIFLA* acknowledged and reaffirmed that principle, *NIFLA* did not overrule *Pickup*.

6

## II.
## ACCEPTING APPELLANT'S ARGUMENT THAT CONVERSION THERAPY IS PROTECTED SPEECH WOULD ENDANGER THE PUBLIC.

A ruling that SB 5722 violates the First Amendment because the statute forbids protected speech would call into question the constitutionality of civil liability for malpractice and imposition of professional discipline. More than 70 years ago, the Supreme Court explained that "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949). Thus, in *Giboney*, a state could enjoin unlawful picketing despite the picketers' use of placards, because "placards used as an essential and inseparable part of a grave offense against an important public law cannot immunize that unlawful conduct from state control." *Id.*

*Giboney* involved speech as a component of criminal conduct, but subsequent cases demonstrate that the *Giboney* principle applies to *any* conduct that is within the power of the State to forbid or regulate. A generation after *Giboney*, in a case involving a state bar's prohibition on lawyer solicitation, the Supreme Court reiterated that "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik v.*

7

*Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). The Court commented: "Numerous examples could be cited of communications that are regulated without offending the First Amendment, such as the exchange of information about securities, corporate proxy statements, the exchange of price and product information among competitors, and employers' threats of retaliation for the labor activities of employees." *Id.* (citations omitted).

In *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043 (9th Cir. 2000) ("*NAAP*"), this Court applied the *Giboney* principle to speech employed as a component of psychoanalysis, rejecting the plaintiffs' contention "that, because psychoanalysis is the 'talking cure,' it deserves special First Amendment protection because it is 'pure speech.'" *Id.* at 1054. This Court explained: "[T]he key component of psychoanalysis is the treatment of emotional suffering and depression, *not* speech. . . . That psychoanalysts employ speech to treat their clients does not entitle them, or their profession, to special First Amendment protection." *Id.* (emphasis in original; internal quotation marks omitted).

Under current doctrine, a state may regulate various professions, unimpeded by the First Amendment, to protect the public from, for example, spoken misconduct by unscrupulous lawyers or charlatan doctors. "[T]he First Amendment . . . does not insulate the verbal

8

charlatan from responsibility for his conduct; nor does it impede the State in the proper exercise of its regulatory functions." *Shea v. Bd. of Med. Exam'rs*, 81 Cal. App. 3d 564, 577 (1978); *see also Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 824 (2011) ("'a lawyer's right to freedom of expression is modified by the lawyer's duties to clients'"). The First Amendment does not provide a constitutional right to hawk snake oil.

A doctor surely could not evade malpractice liability for giving incompetent medical advice—say, advising a patient to take up smoking because the doctor believes it to be healthy, or advising an anorexic person to lose weight to improve their physical appearance—by claiming it was speech and thus protected by the First Amendment. Yet that is where a judgment for the plaintiffs here could lead. The law has always been otherwise. "First Amendment coverage does not typically extend to malpractice litigation." ROBERT C. POST, DEMOCRACY, EXPERTISE, AND ACADEMIC FREEDOM: A FIRST AMENDMENT JURISPRUDENCE FOR THE MODERN STATE 45 (2012).

The distinction between discussing/opining and practicing is pivotal for purposes of First Amendment analysis. This Court addressed the distinction in *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002), where the federal government had promulgated a policy by which physicians could be sanctioned for recommending the medical use of

9

marijuana for their patients. Invalidating the policy as a First Amendment violation, *Conant* explained that to the extent the policy prohibited physicians from discussing the medical use of marijuana with patients it discriminated on the basis of content, and to the extent the policy prohibited physicians from expressing the opinion that medical marijuana would likely help a specific patient it discriminated on the basis of viewpoint. *Id.* at 637. The policy thus triggered strict scrutiny. However, a prohibition on *prescribing* marijuana was not subject to that scrutiny, because it is not protected expression. *See id.* at 635–36.

Nothing in Washington's legislation prohibits mental health providers from discussing conversion therapy with a patient or expressing the opinion that it might help the patient. They are only prohibited from *practicing* conversion therapy as *mental health providers*. This is not a case in which mental health professionals are prohibited from communicating truth to a patient or are compelled to communicate a falsehood; this is a case in which mental health professionals are prohibited from engaging in malpractice.

Doctors may be sanctioned by licensing boards or held liable in medical malpractice proceedings for wrongdoing that is committed through speech, such as expressing an inaccurate or false medical opinion or advising a dangerous course of conduct. Administrative and

judicial proceedings for medical malpractice perpetrated via speech have long been permitted without any suggestion that they raise First Amendment issues. As the former Dean of Yale Law School has written, "The practice of medicine, like all human behavior, transpires through the medium of speech. In regulating the practice, therefore, the state must necessarily also regulate professional speech. Without so much as a nod to the First Amendment, doctors are routinely held liable for malpractice for speaking or for failing to speak." Robert Post, *Informed Consent to Abortion: A First Amendment Analysis of Compelled Physician Speech* 2007 U. ILL. L. REV. 939, 950 (2007) (footnotes omitted).

SB 5722, in effect, declares conversion therapy for minors to be a form of medical malpractice. It makes no difference whether such malpractice is made sanctionable by legislation or by the common law. The First Amendment is not implicated. States have a vital interest in protecting public health by preventing medical malpractice. And the primacy of such public health concerns is at its zenith where the mental and physical health of minors is at stake.

Laws and regulations commonly restrict or compel speech by professionals when acting in their capacity as such. Courts may hold doctors liable for telling a patient to take a quack remedy; disciplinary agencies may sanction lawyers for advising a client to prosecute a

11

frivolous appeal; regulations may require pharmacists to disclose the potential side effects of prescribed drugs. Judges should be leery of constitutionalizing such speech. The consequence would be to reduce the ability of courts, legislatures, and administrative agencies to protect the public from professional misconduct.

## CONCLUSION

For the foregoing reasons, the Court should rule that SB 5722 does not violate the First Amendment.

DATED: January 21, 2022.

Respectfully,

ARNOLD & PORTER KAYE SCHOLER LLP

By /s/ *Sean M. SeLegue*
SEAN M. SELEGUE

*Attorneys for Amicus Curiae*
*First Amendment Scholars*

## CERTIFICATE OF COMPLIANCE
### (FED. R. APP. P. 29(a)(5), 32(a)(7) AND CIRCUIT RULE 32-1)

Pursuant to Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7), and Ninth Circuit Rule 32-1, I certify that the foregoing **Brief *Amicus Curiae* Of First Amendment Scholars Supporting Appellees and Affirmance** is proportionally spaced, in a typeface of 14 points or more and contains 2,444 words, exclusive of those materials not required to be counted under Rule 32(a)(7)(B)(iii).

DATED: January 21, 2022.

                                          */s/ Sean M. SeLegue*
                                             SEAN M. SELEGUE

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 21, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.



*/s/ Sean M. SeLegue*
SEAN M. SELEGUE